

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

*RQ 431*

May 16, 1974

The Honorable Raymond W. Vowell
Commissioner
State Dept. of Public Welfare
John H. Reagan Building
Austin, Texas 78701

Opinion No. H- 308

Re: Interpretation of appropria-
tions rider concerning contract
between Department of Public
Welfare and a health insurance
organization.

Dear Mr. Vowell:

You have asked our opinion on questions regarding the interpretation
of an appropriations rider affecting the Medicaid Reserve Fund which is an
aspect of the State's participation in medical assistance programs under
Title XIX of the Social Security Act (42 USCA § § 1396-1396-i). The
State's program is authorized by the Medical Assistance Act of 1967,
Article 695j-1, V. T. C. S., , which was enacted pursuant to Article 3, § 51-a
of the Constitution.

As part of its Title XIX program, Texas has contracted with Texas
Blue Cross-Blue Shield (Group Hospital Services, Inc. ) (hereafter Blue
Cross) for the provision of medical benefits to qualified recipients. The
State pays a premium for each eligible individual. Federal matching funds
constitute more than sixty per cent of the premiums. The contract is
designed so that Blue Cross will receive sufficient premiums to equal its
expenses, and certain other charges consisting of (1) benefits paid, (2)
administrative expenses, (3) taxes, (4) a community support or risk
charge and ( 5) maintenance of the statutorily required reserve. To the
extent that premiums exceed expenses and charges the excess is credited
to the Medicaid Reserve. If the premiums are insufficient to offset expenses,
Blue Cross is entitled to recover its deficit from the Reserve, and if the
Reserve is insufficient Blue Cross has a right to recover from the Reserve

surplus accumulated in subsequent years.   At the termination of the contract any balance in the Reserve will be paid to the   State.

Blue Cross is required by the contract to invest any funds in the Reserve which are in excess of the amount needed to discharge the obligations of the program.   The income, reduced by 0. 3% of the invested funds which constitutes an administrative charge payable to Blue Cross, is returned to the Reserve.   The Reserve fund exceeds $30 million, an amount considered by the federal government to be considerably more than sound management practices dictate.

The rider to your appropriation which forms the basis of your question provides:

> "(39)   None of the funds held in reserve by Texas Blue Cross-Blue Shield shall be used to pay monthly premium charges for individuals eligible for medicaid until all State funds appropriated in item number 50A for Blue Cross premiums have been exhausted. "

Acts 1973, 63rd Leg., ch. 659, p. 1866.

You ask if the rider precludes the negotiation of a premium which would reasonably be expected to have the effect of reducing the size of the reserve.   We limit our answer to that question.

We believe there are numerous reasons compelling the conclusion that the rider does not preclude the negotiation of such a premium.   The contract between the State and Blue Cross was in existence prior to the adoption of the rider, and since the rider involves the contract, the contract   obviously was  within the contemplation of the Legislature.   The purpose of the Reserve Fund is to permit Blue Cross to look to it to offset its deficit.   Clearly the rider was not intended to so fundamentally alter the purpose of the Fund as to require the State to pay premiums which are designed to insure against any necessity to invade the reserves. Such an interpretation would amount to a legislative grant of a valuable

benefit to a private corporation for which the State received nothing in return. We do not believe this was the intent of the Legislature or the effect of the rider. Furthermore, if the rider had that effect, the provision would be subject to serious questions involving its constitutionality. See Article 3, § § 50 and 51, Constitution of Texas.

Therefore, it is our opinion that the Department is not precluded form negotiating a premium for its Title XIX program which can be expected to result in a reduction of the Medicaid Reserve. Indeed, it may be required to do so. 42 USCA § 1396a (a) (4); Article 695j-1, § 3(1) and (6), V. T. C. S.; and Article 695c, § 4 (12), V. T. C. S.

## SUMMARY

The premium negotiated by the Department of Public Welfare and a health insurance organization for provision of benefits under Texas' Title XIX program may be of a size designed to reduce the size of the Medicaid Reserve.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee